DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Pike County Common Pleas Court summary judgment in favor of Westfield Insurance Company, defendant below and appellee herein.
 {¶ 2} Opal F. Howard, plaintiff below and appellant herein, raises the following assignments of error for review:
 FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED BY FAILING TO ACCOUNT FOR THE FACT THAT THE GENERAL ASSEMBLY SPECIFICALLY DELETED THE FORMER ALLOWANCE AT 3937.18(K)(1-2) OF `INTRA-FAMILY' UM/UIM EXCLUSIONS." *Page 2 
 SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT FAILED TO ACCOUNT FOR THE SUPREME COURT'S DISTINCTION BETWEEN A POLICY `DEFINITION' AND A POLICY `EXCLUSION.'"
 THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED BY ENFORCING THE INTRA-FAMILY EXCLUSIONS IN THE APPELLANTS' POLICY NOTWITHSTANDING THE FACT THAT THE APPELLEE HAS NOT MADE THE EXCLUSIONS CONSPICUOUS AND EASY TO UNDERSTAND."
 {¶ 3} On April 17, 2004, appellant suffered injuries in an automobile while a passenger in a vehicle that her husband drove. Appellant filed a complaint against her husband and appellee. She alleged negligence against her husband and sought uninsured/underinsured motorist (UM/UIM) coverage under appellee's policy, which listed appellant's husband as the named insured. Appellee answered and filed a counterclaim seeking a declaration that appellant is not entitled to UM/UIM coverage.
 {¶ 4} On July 20, 2006, appellee requested summary judgment. It asserted that appellant is not entitled to UM/UIM coverage because she is only entitled to recover damages from the owner or operator of an uninsured motor vehicle and the policy excludes from the definition of uninsured motor vehicle "any vehicle * * * owned by * * * you." Appellee claimed that because appellant's husband owns the vehicle, the vehicle is not "uninsured" as defined in the policy and appellant thus is not entitled to coverage.
 {¶ 5} Appellant argued that R.C. 3937.18 no longer permits insurers from prohibiting the "intrafamily" stacking provision *Page 3 
that appellee sought to enforce. Appellant contended that because the current version of R.C. 3937.18 does not contain a provision similar to former R.C. 3937.18(K)(2), the Ohio General Assembly did not intend to restrict intrafamily stacking.
 {¶ 6} Appellee countered that the legislature did not intend R.C.3937.18, as enacted by S.B. 97, to contain an exhaustive list of restrictions, exclusions, etc., that insurers could include in the policy. Instead, insurers may include various other restrictions in their automobile liability policies as the "including but not limited to" language used in R.C. 3937.18(I) evinces. Appellee argued:
 "For nearly a decade, the General Assembly sought to reign in the effect of a series of Ohio Supreme Court decisions which had found UM/UIM coverage in circumstances obviously never intended by insurers. Those decisions all stemmed from a common fact. R.C. 3937.18 required insurers writing business in Ohio to offer UM/UIM coverage and contained numerous provisions stating what terms could and could not be included in UM/UIM coverage. Finally, the General Assembly had had enough. In 2001, the General Assembly removed the mandatory offer requirement and, in the clearest of terms, stated that insurers are free to include in their policies `terms and conditions that preclude coverage for bodily injury or death under specified circumstances, including but not limited to the following circumstances.' R.C. 3937.18(I). The list of `circumstances' contained in subdivisions (I)(1)-(5), which was an exclusive list under S.B. 267 and its predecessor, H.B. 261, is no longer exclusive. Insurers may preclude coverage in other circumstances as well. Westfield has done that via its policy's definition of `uninsured motor vehicle' which excepts from that definition any vehicle owned by its named insureds or their family members."
 {¶ 7} Appellee further contended that S.B. 97 does not require specific statutory authorization to permit insurers to preclude coverage. Appellee argued: "A counterpart of former *Page 4 
R.C. 3937.18(K)(2) is neither necessary nor appropriate, in view of the fact that offering of UM/UIM coverage is no longer mandatory and in view of the fact that the statute now contains a general authorization for insurers to preclude coverage in specified circumstances."
 {¶ 8} The trial court granted appellee summary judgment and denied appellant's cross-summary judgment motion. The court concluded "that the unambiguous language of the insurance contract that is a subject of this action excludes from the definition of `uninsured motor vehicle' any vehicle `[o]wned by or furnished or available for the regular use of you or any family member.'" The court thus determined that appellant was not entitled to UM/UIM coverage under appellee's policy. This appeal followed.
 {¶ 9} Because appellant's three assignments of error challenge the propriety of the trial court's summary judgment decision, we address them together.
 A SUMMARY JUDGMENT STANDARD {¶ 10} Appellate courts review trial court summary judgment decisions de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105,671 N.E.2d 241. Accordingly, appellate courts must independently review the record to determine if summary judgment is appropriate. In other words, appellate courts need not defer to trial court summary judgment decisions. See Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711, *Page 5 622 N.E.2d 1153; Morehead v. Conley (1991), 75 Ohio App.3d 409, 411-412,599 N.E.2d 786. Thus, to determine whether a trial court properly awarded summary judgment, an appellate court must review the Civ.R. 56 summary judgment standard as well as the applicable law. Civ.R. 56(C) provides:
 Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
Thus, trial courts may not award summary judgment unless the evidence demonstrates that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and after viewing the evidence most strongly in favor of the nonmoving party that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997), 77 Ohio St.3d 421, 429-430,674 N.E.2d 1164.
 B INTERPRETATION OF STATUTES *Page 6 {¶ 11} The case at bar requires us to interpret R.C. 3937.18 by deciding whether it permits the provision appellee seeks to enforce. Regarding the interpretation of statutes, the Ohio Supreme Court recently stated:
 "The primary goal of statutory construction is to ascertain and give effect to the legislature's intent in enacting the statute. Brooks v. Ohio State Univ. (1996), 111 Ohio App.3d 342, 349, 676 N.E.2d 162. The court must first look to the plain language of the statute itself to determine the legislative intent. State ex rel. Burrows v. Indus. Comm. (1997), 78 Ohio St.3d 78, 81, 676 N.E.2d 519. We apply a statute as it is written when its meaning is unambiguous and definite. Portage Cty. Bd. of Commrs. v. Akron, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 52, citing State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn. (1996), 74 Ohio St.3d 543, 545, 660 N.E.2d 463. An unambiguous statute must be applied in a manner consistent with the plain meaning of the statutory language. State ex rel. Burrows, 78 Ohio St.3d at 81, 676 N.E.2d 519."
State v. Lowe, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, at ¶ 9.
 {¶ 12} Courts must give effect to the words used in a statute and must not delete words used or insert words not used. Erb v. Erb (2001),91 Ohio St.3d 503, 507, 747 N.E.2d 230, citing Cleveland Elec. IlluminatingCo. v. Cleveland (1988), 37 Ohio St.3d 50, 524 N.E.2d 441, paragraph three of the syllabus. If the meaning of a statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary. State ex rel. Savarese v. Buckeye Local School Dist. Bd. ofEdn. (1996), 74 Ohio St.3d 543, 545, 660 N.E.2d 463. Additionally, we note that "[f]or the purpose of determining the scope of coverage of an [uninsured or] underinsured motorist claim, the statutory *Page 7 
law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Ross v. Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281,695 N.E.2d 732, syllabus. The parties do not dispute that the S.B. 97 version of R.C. 3937.18 applies in the case sub judice.
 C INTERPRETATION OF INSURANCE CONTRACTS {¶ 13} We also must interpret appellee's policy to determine whether it specifies the exclusion appellee seeks to enforce in the case at bar.
 {¶ 14} An insurance policy is a contract. Westfield Ins. Co. v.Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 9. A court interpreting a contract should give effect to the contracting parties' intent. Id. at ¶ 11. In doing so, courts must examine the insurance contract as a whole and presume that the language used in the policy reflects the parties' intent. Id., citing Kelly v. Med. Life Ins.Co. (1987), 31 Ohio St.3d 130, 509 N.E.2d 411, paragraph one of the syllabus. "We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy." Id., citing Alexander v. Buckeye Pipe LineCo. (1978), 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph two of the syllabus. "[W]ords and phrases used in an insurance policy must be given their natural and commonly accepted meaning." Gomolka v. State Auto.Mut. Ins. Co. (1982), 70 Ohio St.2d 166, 167-168, *Page 8 436 N.E.2d 1347. When the words used are clear, courts "may look no further than the writing itself to find the intent of the parties." Id.
 D R.C. 3937.18 {¶ 15} In her first assignment of error, appellant asserts that the trial court failed to consider the legislative intent in not re-enacting a provision similar to former R.C. 3937.18(K)(2). She contends that the legislature's decision not to include in the Ohio Revised Code a similar provision reflects its intent to prohibit such restrictions. We disagree.
 {¶ 16} Former R.C. 3937.18(K), as enacted by H.B. 261, provided:
 As used in this section, "uninsured motor vehicle" and "underinsured motor vehicle" do not include any of the following motor vehicles:
 (1) A motor vehicle that has applicable liability coverage in the policy under which the uninsured and underinsured motorist coverages are provided;
 (2) A motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured.
R.C. 3937.18(K)(2) was commonly referred to as the household or intra-family exclusion. See, e.g., Burnett v. Motorists Mut. Ins.Cos., Trumbull App. No. 2003-T-0101, 2005-Ohio-4333. The legislature enacted this provision in response to the Ohio Supreme Court's decision in State Farm Automobile Ins. Co. v. Alexander (1992),62 Ohio St.3d 397, 583 N.E.2d 309. In Alexander, the court held that the household exclusion was invalid because, by eliminating coverage for torts that occur in *Page 9 
the insured's vehicle, the exclusion restricted coverage in a manner contrary to the intent of former R.C. 3937.18, which was to ensure that insured motorists who were injured by negligent, uninsured motorists were not left without compensation simply because the tortfeasor lacked liability coverage. Id. at 400. The court stated: "An automobile insurance policy may not eliminate or reduce uninsured or underinsured motorist coverage, required by R.C. 3937.18, to persons injured in a motor vehicle accident, where the claim or claims of such persons arise from causes of action that are recognized by Ohio tort law." Id. at syllabus; see, also, Fazio v. Hamilton Mut. Ins. Co.,106 Ohio St.3d 327, 2005-Ohio-5126, 835 N.E.2d 20 (discussing Alexander).
 {¶ 17} In September of 2000, the legislature removed subdivision (K)(2) when it amended R.C. 3937.18 upon the enactment of S.B. 267. This version of the statute removed the household/intra-family exclusion from the definition of "uninsured motor vehicle" or "underinsured motor vehicle" as used in R.C. 3937.18(K).
 {¶ 18} The next amendment to R.C. 3937.18 eliminated the requirement of the mandatory offering of UM/UIM coverage. See S.B. 97. The current version of the statute does not contain a provision similar to former R.C. 3937.18(K)(2). However, R.C. 3937.18(I) contains a non-exhaustive list of terms and conditions that insurers may include in their policies to preclude coverage for bodily injury or death that an insured suffers:
 (I) Any policy of insurance that includes uninsured motorist coverage, underinsured motorist *Page 10 
coverage, or both uninsured and underinsured motorist coverages may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under specified circumstances, including but not limited to any of the following circumstances:
 (1) While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy under which the uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages are provided;
 (2) While the insured is operating or occupying a motor vehicle without a reasonable belief that the insured is entitled to do so, provided that under no circumstances will an insured whose license has been suspended, revoked, or never issued, be held to have a reasonable belief that the insured is entitled to operate a motor vehicle;
 (3) When the bodily injury or death is caused by a motor vehicle operated by any person who is specifically excluded from coverage for bodily injury liability in the policy under which the uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages are provided;
 (4) While any employee, officer, director, partner, trustee, member, executor, administrator, or beneficiary of the named insured, or any relative of any such person, is operating or occupying a motor vehicle, unless the employee, officer, director, partner, trustee, member, executor, administrator, beneficiary, or relative is operating or occupying a motor vehicle for which uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages are provided in the policy;
 (5) When the person actually suffering the bodily injury, sickness, disease, or death is not an insured under the policy.
(Emphasis added.)
 {¶ 19} Contrary to appellant's arguments, the statute's plain language, with its use of the phrase "including but not limited to," indicates that the list of "terms and conditions" that may *Page 11 
preclude coverage is not exhaustive. Rather, the list of circumstances and examples in the statutes are not the only types of "terms and conditions" that are permissible. Kelly v. Auto- Owners Ins. Co., Hamilton App. No. C-050450, 2006-Ohio-3599, appeal not allowed,112 Ohio St.3d 1406, 2006-Ohio-6447, 858 N.E.2d 817 (stating that "the exclusions in the statute serve only as examples; a UM policy may include any terms and conditions precluding coverage, as long as these circumstances are specified in the policy"). As one court explained:
 "[W]hile the General Assembly removed from the statute preconditions or preclusions to coverage, * * * it expressly left to the contracting parties to agree upon any `terms and conditions that preclude coverage for bodily injury or death suffered by an insured under specified circumstances.' The fact that the legislature removed its own `terms and conditions that preclude coverage' from the statute does not mean that no such terms and conditions are permitted to be placed in policies with UM coverage. Rather, R.C. 3937.18(I) reveals that the legislature sought to `deregulate' such policies, leaving to the parties whether any preconditions or exclusions to coverage will govern their relationship."
Snyder v. Am. Family Ins. Co., Franklin App. No. 05AP-116,2005-Ohio-6751, at ¶ 22, appeal allowed, 109 Ohio St.3d 1455,847 N.E.2d 5, 2006-Ohio-2226.
 {¶ 20} Thus, simply because the statute does not list the exception that appellee seeks to enforce in the case at bar does not mean that it constitutes an impermissible exception. "[The] exclusion can be enforced to deny UM coverage because the current UM statute, unlike former versions of the statute, eliminates the mandatory offering of UM coverage and expressly allows insurers to include terms and conditions in UM policies that preclude *Page 12 
coverage." Kelly, at ¶ 12. "The legislature appears to have swapped an interest in providing compensation for `uninsured' motorists with an interest in providing reasonable rates. Thus, the UM statute does not prevent an insurance company from eliminating UM coverage when one spouse becomes legally liable to another for personal injuries." Id., citing S.B. No. 97, Section 3(A) ("In enacting this act, it is the intent of the General Assembly to do all of the following: (A) protect and preserve stable markets and reasonable rates for automobile insurance for Ohio consumers. * * *.").
 {¶ 21} In Green v. Westfield Natl. Ins. Co., Medina App. No. 06CA25-M,2006-Ohio-5057, appeal not allowed, 112 Ohio St.3d 1491, 2007-Ohio-724,862 N.E.2d 118, the court upheld the validity of an exclusion similar to the one at issue in the case sub judice. In Green, the policy precluded UM/UIM coverage for any vehicle "[o]wned by or furnished or available for the regular use of you or a family member." The court determined that R.C. 3937.18(I) plainly supported the insurer's policy provision that precluded UM/UIM coverage for vehicles "[o]wned by or furnished or available for the regular use of you or a family member." The court stated that the Ohio General Assembly's choice of words in the statute, i.e., "including but not limited to," "necessarily means that an insurer is allowed to include terms and conditions which preclude UM/UIM coverage for circumstances other than those listed in the statute, provided they are specified within the policy." Id. at ¶ 16. *Page 13 
 {¶ 22} The Green court additionally rejected the appellant's argument that because UM/UIM coverage may be precluded if a vehicle is not specifically identified, then UM/UIM coverage may not be precluded if a vehicle is specifically identified in the policy. The court noted that the appellant failed to cite any case law or statutory authority to support this proposition. The court also found unavailing the appellant's argument "that the legislature intended `to declare that if a vehicle is specifically identified in the automobile policy and the insured pays a premium for the coverage, the insurance company can not avoid its contractual obligations by precluding coverage elsewhere.'' Id. at ¶ 18. The court observed that the appellant's argument essentially requested the court `to interpret R.C. 3937.18 to impose mandatory UM/UIM coverage if a vehicle is identified in the automobile policy." Id. The court determined that the appellant's interpretation was "in direct conflict with the legislative intent clearly evidenced by Senate Bill 97." Id. The court noted that S.B. 97 also states:
 "In enacting this act, it is the intent of the General Assembly to do all of the following:
 * * *
 (B) Express the public policy of the state to:
 (1) Eliminate any requirement of the mandatory offer of uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages;
 (2) Eliminate the possibility of uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages being implied as a matter of law in any insurance policy;
 (3) Provide statutory authority for the inclusion of exclusionary or limiting provisions in uninsured *Page 14 
motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages[.]"
The Green court then stated:
 "Section 3 of Senate Bill 97 clearly demonstrates that it was the intent of the legislature to: (1) eliminate the requirement of mandatory UM/UIM coverage; (2) eliminate UM/UIM coverage being implied as a matter of law in any insurance policy; and (3) to provide statutory authority for including exclusions or other limitations in UM/UIM coverage should it be offered by the insurer. This stated intent is consistent with the plain language of the statute as amended. In fact, numerous sections of R.C. 3937.18, not just (I)(1), allow the insurer to include terms and provisions. See R.C. 3937.18(F); (G); (H)."
Id. at ¶ 19.
 {¶ 23} The Green court thus concluded that under current R.C. 3937.18
"insurance companies and their customers are free to contract in any manner that they see fit. Insurers are not required by law to offer UM/UIM coverage. However, if insurers opt to offer UM/UIM coverage, they are free to include exclusions or limitations on that coverage." Id. at ¶ 20.
 {¶ 24} We agree with the Green court's analysis of the issues. R.C.3937.18(I) is not an exhaustive list of the terms and conditions that insurers may include in their policies. See, also, Foss v. CincinnatiIns. Co., Stark App. No. 2005CA246, 2006-Ohio-1671; Kelly, supra. Insurers may include other terms and conditions as long as those terms and conditions do not otherwise violate R.C. 3937.18. Cf.Moore, supra; Ross, supra.
 {¶ 25} Appellant asserts that because current R.C. 3937.18 does not contain a provision similar to former R.C. 3937.18(K), then the legislature obviously intended to disallow such *Page 15 
restrictions. We do not agree. As we determined above, R.C. 3937.18(I) does not restrict the type of exclusions or limitations that insurers may place on UM/UIM coverage, except as otherwise indicated in R.C.3937.18. The Ohio General Assembly could have determined that a provision similar to former R.C. 3937.18(K)(2) was unnecessary in light of R.C. 3937.18(I).
 {¶ 26} We also find appellant's reliance on Shay v. Shay,164 Ohio App.3d 518, 2005-Ohio-5874, 843 N.E.2d 194, misplaced. InShay, the court held that a household exclusion was invalid without the statutory authorization that former R.C. 3937.18(K)(2) provided. However, Shay involved the S.B. 267 version of the statute, which eliminated R.C. 3937.18(K)(2). Furthermore, at the time Shay was decided, insurers were required to offer UM/UIM coverage that complied with R.C. 3937.18. Currently, insurers need not offer UM/UIM coverage and R.C. 3937.18(I) authorizes insurers to write terms and conditions in their policies that preclude UM/UIM coverage.
 {¶ 27} We further disagree with appellant that R.C. 3937.18 is ambiguous because its provisions conflict with each other. According to appellant, the statute is "self-contradictory"because R.C. 3937.18(I) "urports to allow any and every contractual limitation, while the other sections of the same statute clearly proscribe other common limitations." Under R.C. 3937.18, as we have previously recognized, exclusions and restrictions in an UM/UIM policy are valid as long as not otherwise proscribed in the statute. We see nothing ambiguous *Page 16 
about a statute that sets forth a non-exhaustive list of terms and conditions that insurers may include in their UM/UIM policies and, at the same time, contains provisions that limit the types of terms and conditions insurers may include in their policies. The limiting provisions serve to circumscribe the apparent limitless terms and conditions that R.C. 3937.18(I) otherwise authorizes.
 {¶ 28} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 E DEFINITION VS. EXCLUSION {¶ 29} In her second assignment of error, appellant asserts that the trial court failed to recognize that R.C. 3937.18(I) regulates "exclusions," while the provision appellee seeks to enforce to deny her coverage is a "definition." She asserts that R.C. 3937.18(I) does not allow insurers to limit definitions, but only allows insurers to specify exclusions. We disagree with appellant.
 {¶ 30} Appellant cites Kyle v. Buckeye Union Ins. Co.,103 Ohio St.3d 170, 2004-Ohio-4885, 814 N.E.2d 1195, to support this argument. InKyle, the court held that former R.C. 3937.18(J)(1) and former R.C.3937.18(K)(2) do not conflict. "Former R.C. 3937.18(J) addressed certain circumstances where a policy could exclude uninsured/underinsured motorist (UM/UIM) coverage for an insured." Id. at ¶ 1. The statute provided:
 [UM/UIM coverage] may include terms and conditions that preclude coverage for bodily injury or death *Page 17 
suffered by an insured under any of the following circumstances:
 (1) While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy under which the uninsured and underinsured motorist coverages are provided.
"Former R.C. 3937.18(K) excluded certain tortfeasors' vehicles from being considered uninsured or underinsured." Kyle, at ¶ 1. The statute provided:
 As used in this section, "uninsured motor vehicle' and "underinsured motor vehicle" do not include any of the following motor vehicles:
 * * * *
 (2) A motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured.
The Kyle court determined that the two subdivisions "address[ed] different topics" and did not conflict. Id. at ¶ 1. The court explained that "[p]aragraphs (J) and (K) * * * do not regulate the same thing. Where paragraph (J) states circumstances in which an insured can be denied UM/UIM protection, paragraph (K) articulates when a tortfeasor will not be considered uninsured or underinsured. These provisions may function in the alternative or together." Id. at ¶ 17.
 {¶ 31} The court thus held that "former R.C. 3937.18(J)(1) and (K)(2) are complementary. Paragraph (J) addressed certain circumstances in which a policy could exclude UM/UIM coverage for an insured. Paragraph (K) excluded certain tortfeasors' vehicles from being considered uninsured or underinsured. Because these *Page 18 
paragraphs address different topics, they do not conflict." Id. at ¶ 21.
 {¶ 32} Appellant contends that the Kyle court found that paragraph K addresses definitions, while paragraph J addresses exclusions. She contends that the Kyle court "found that the difference between exclusions and definitions concerning what is and is not an uninsured motor vehicle is the key to understanding the interrelation between former section K and former section J." Appellant then asserts that current R.C. 3937.18(I) is similar to former paragraph J and regulates exclusions. She claims that it does not govern definitions. We do not agree with appellant's interpretation of Kyle. None of the language inKyle makes any distinction between definitions and exclusions. Instead, the Kyle court determined that section (J)(1) contained an exclusion for when an insured would be denied UM/UIM and that (K)(2) contained an exclusion stating that certain vehicles would not be covered under UM/UIM coverage. Thus, we disagree with appellant that to be valid under R.C. 3937.18(I), the provision must be exclusionary as opposed to definitional. The statute, the case law appellant cites, and the legislative history do not support appellant's argument that a distinction exists between definitions and exclusions. The uncodified law, as the Green court noted, clearly evinces the legislature's intent to allow insurers to limit coverage. Furthermore, R.C. 3937.18(I) does not state that it is a list of "exclusions." Instead, the statute states that insurers may include "terms and conditions *Page 19 
that preclude coverage." The statute does not distinguish whether that "preclusion" must be in the form of a "definition" or an "exclusion."
 {¶ 33} Accordingly, we overrule appellant's second assignment of error.
 F CONSPICUOUS {¶ 34} In her third assignment of error, appellant argues that the provision at issue in the case at bar is invalid because it is not conspicuous.
 {¶ 35} Ohio courts generally uphold exclusions, with the following caveat: "[A]n exclusion must be conspicuous and in terminology easily understood by a customer. A customer must be aware of the provision, understand the meaning and voluntarily agree to any restrictions * * * ." Ady v. W. Am. Ins. Co. (1982), 69 Ohio St.2d 593, 599,433 N.E.2d 547. Additionally, an insured is charged with knowledge of the contents of an insurance contract. Nickschinski v. Sentry Ins. Co. (1993),88 Ohio App.3d 185, 195, 623 N.E.2d 660; Grange Mut. Cas. Co. v. Fodor
(1984), 21 Ohio App.3d 258, 487 N.E.2d 571.
 {¶ 36} In the case at bar, appellee's definition of an "uninsured motor vehicle," which excluded any vehicle that the insured owned, was clear and conspicuous such that appellant and her husband should have understood its meaning. The policy stated that "uninsured motor vehicle does not include any vehicle or equipment * * * [o]wned by * * * you." Nothing about this *Page 20 
language is ambiguous. Furthermore, the language is not hidden in the policy, but instead, appears within the policy provisions and applicable endorsements. Appellant only had to read the policy to discover this exclusion for vehicles that she and her husband own.
 {¶ 37} Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 McFarland, P.J. Kline, J.: Concur in Judgment Opinion *Page 1