STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY ET AL. *v.* GRACE ET AL.
[Cite as *State Farm Mut. Auto. Ins. Co. v. Grace*,
123 Ohio St.3d 471, 2009-Ohio-5934.]

*Uninsured-/underinsured-motorist insurance — R.C. 3937.18, as amended by 2001 Am.Sub.S.B. No. 97, permits insurers to include provision precluding payment of medical expenses when such expenses have been paid or are payable under the medical payments coverage purchased in the same policy.*

(No. 2009-0122 — Submitted September 1, 2009 — Decided
November 17, 2009.)

ON ORDER from the United States District Court for the Northern District of Ohio, Eastern Division, Certifying a Question of State Law, Nos. 1:08-CV-254, 5:08-CV-1917, and 1:08-CV-2083.

_____

**O'DONNELL, J.**

{¶ 1}  The United States District Court for the Northern District of Ohio, Eastern Division, has certified the following question of state law for our resolution:  "Does Ohio Revised Code Section 3937.18, as amended in 2001 by S.B. 97 (effective October 31, 2001), permit insurers to include an express limitation of coverage in an automobile insurance policy that precludes payments made under Uninsured/Underinsured Motorist coverage for medical expenses that are paid or payable under the Medical Payments coverage purchased in the same policy?"  Stated differently, the question is whether an insurance carrier may decline to pay medical expenses pursuant to UM/UIM coverage when those same

medical expenses have previously been paid or will be paid pursuant to the medical payments coverage in the same policy.

{¶ 2} We answer in the affirmative and hold that R.C. 3937.18(I), as amended by S.B. 97, permits an insurer to limit coverage so as to preclude payment pursuant to UM/UIM coverage for medical expenses that have previously been paid or are payable under the medical payment coverage in the same policy.

## Facts and Procedural History

{¶ 3} We adopt the following factual and procedural history from the certification order submitted by the United States district court.

{¶ 4} Laura Grace, Elizabeth Garcia, Ladon Ruffin, Dorian Jones, Angela Webb, and Patricia Schwab (collectively, "the insureds"), allege involvement in separate motor vehicle accidents with uninsured motorists. At the time of their respective accidents, each claimant had purchased an automobile insurance policy issued by either State Farm Mutual Automobile Insurance Company or State Farm Fire & Casualty Company (collectively, "State Farm") that included both uninsured- and underinsured-motorist ("UM/UIM") coverage and medical payments ("Med Pay") coverage in the same policy. Each claimant submitted a request for payment of medical expenses under both the UM/UIM and Med Pay coverages pursuant to the terms of their respective policies.[1]

{¶ 5} State Farm declined to pay medical expenses under the UM/UIM coverage, asserting that such expenses were already paid or payable under the Med Pay coverage of the same policy. Grace, Garcia, Ruffin, and Jones together

---

1. In its brief, State Farm asserts that Patricia Schwab's complaint does not allege that she was injured in an automobile accident involving an uninsured or underinsured motorist, that she incurred medical expenses as a result of any accident, or that State Farm did not pay for any damages she incurred in an accident. However, State Farm acknowledges that she claims to represent a putative class of insureds who (1) paid separate premiums for UM/UIM coverage and Med Pay coverage and/or (2) suffered bodily injury and incurred medical expenses for which State Farm refused to pay under both coverages.

filed a putative class action against State Farm, and Webb and Schwab each filed individual putative class actions against State Farm. Each insured sought to represent a class of persons composed of all residents of the state of Ohio who (1) were insured persons under a policy of insurance issued by State Farm that included UM/UIM coverage and Med Pay coverage, for which State Farm charged separate premiums, (2) were insured persons under a policy of insurance comprised of State Farm's standard policy form or forms that included a purported "non-duplication" clause, and (3) suffered a bodily injury for which State Farm refused to provide medical payment benefits under both the UM/UIM and Med Pay portions of the policy.

{¶ 6} These underlying actions challenge the enforceability of the nonduplication clauses set forth in State Farm automobile insurance policies, which purportedly preclude payment pursuant to the UM/UIM coverage for medical expenses that are paid or payable under the Med Pay coverage purchased in the same policy.

{¶ 7} The parties do not dispute that the declarations page of each policy identified separate limits of coverage for UM/UIM and Med Pay coverage, or that State Farm charged separate premiums for each of these coverages. Each of the challenged policies contained an endorsement form 6083VV, or a substantially identical form, containing the following "non-duplication" clause limiting the UM/UIM coverage:

{¶ 8} "**Non-Duplication**

{¶ 9} "We will not pay under Uninsured Motor Vehicle Coverage any medical expenses paid or payable under:

{¶ 10} "(1) Medical Payments Coverage of this policy, or

{¶ 11} "(2) The medical payments coverage, no fault coverage, personal injury protection, or other similar coverage of any other motor vehicle policy." (Boldface sic.)

{¶ 12} Each policy also contained a separate "non-duplication" clause within the Med Pay portion of the policy, stating:

{¶ 13} "**Non-Duplication**

{¶ 14} "No *person* for whom medical expenses are payable under this coverage shall recover more than once for the same medical expense under this or similar vehicle insurance." (Boldface and italics sic.)

{¶ 15} Confronted with State Farm's motions for judgment on the pleadings alleging that the nonduplication clauses contained in the subject insurance policies are valid and enforceable as a matter of law, the United States district court certified the instant question of state law to this court pursuant to Sup.Ct.Prac.R. XVIII. We accepted the certified question and agreed to answer it. *Grace v. State Farm Mut. Auto. Ins. Co.*, 121 Ohio St.3d 1422, 2009-Ohio-1296, 903 N.E.2d 322.

**Argument of the Parties**

{¶ 16} State Farm contends that R.C. 3937.18, as amended by Am.Sub.S.B. No. 97 ("S.B. 97"), 149 Ohio Laws, Part I, 779, effective October 31, 2001, expressly permits insurers to insert exclusionary or limiting provisions into the UM/UIM portion of their policies. State Farm recognizes that this court's decisions interpreting earlier versions of R.C. 3937.18 have held that such exclusions violate public policy. But State Farm argues that S.B. 97 signals a dramatic shift in public policy because it eliminates the statutorily mandated offering of UM/UIM coverage, as well as the attendant public policy against reducing such mandatory coverage, and expressly permits insurers to contractually limit UM/UIM coverage. Accordingly, State Farm urges that the certified question be answered in the affirmative.

{¶ 17} The insureds, on the other hand, maintain that this court's decisions in *Shearer v. Motorists Mut. Ins. Co.* (1978), 53 Ohio St.2d 1, 7 O.O.3d 1, 371 N.E.2d 210, *Grange Mut. Cas. Co. v. Lindsey* (1986), 22 Ohio St.3d 153,

22 OBR 228, 489 N.E.2d 281, and *Berrios v. State Farm Ins. Co.*, 98 Ohio St.3d 109, 2002-Ohio-7115, 781 N.E.2d 149, reflect a common law prohibition against UM/UIM coverage setoff that survives the enactment of S.B. 97. Specifically, they contend that these decisions stand for the proposition that insureds who pay two separate premiums, one for medical payments coverage, and another for uninsured-/underinsured-motorist coverage are entitled to collect benefits under both coverages. Accordingly, they urge us to answer the certified question in the negative.

{¶ 18} We focus then on the narrow issue of whether R.C. 3937.18(I), as amended by S.B. 97, permits an insurer to contractually preclude payment pursuant to UM/UIM coverage for medical expenses that have previously been paid or are payable under the medical payment coverage in the same policy.

**Interpretation of R.C. 3937.18 Prior to the Enactment of S.B. 97**

{¶ 19} Prior to the General Assembly's 2001 enactment of S.B. 97, R.C. 3937.18 required insurers to offer UM/UIM coverage to all persons who obtained motor vehicle liability insurance policies in Ohio. See, e.g., former R.C. 3937.18, 148 Ohio Laws, Part V, 11380. In construing this statutorily mandated offer of coverage, we held that in the absence of an express rejection of that coverage by the insured, the coverage arose by operation of law. See, e.g., *Linko v. Indemn. Ins. Co. of N. Am.* (2000), 90 Ohio St.3d 445, 449, 739 N.E.2d 338, citing *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 51 O.O.2d 229, 258 N.E.2d 429, paragraph one of the syllabus. Relying upon the mandatory nature of UM/UIM coverage under earlier versions of R.C. 3937.18, this court has previously rejected the efforts of insurers to contractually limit their liability under the UM/UIM portions of their policies.

{¶ 20} In *Shearer v. Motorists Mut. Ins. Co.*, 53 Ohio St.2d 1, 7 O.O. 3d 1, 371 N.E.2d 210, we confronted a term in an insurance policy that permitted a setoff from UM coverage of medical payments paid under another portion of the

policy. Noting that the purpose of R.C. 3937.18 was to provide the injured policy holder the same recovery he would have received if the tortfeasor had insurance, we disagreed. Quoting *Bacchus v. Farmers Ins. Group Exchange* (1970), 106 Ariz. 280, 283, 475 P.2d 264,[2] we stated, " 'The fact that the motorist sees fit to clothe himself with other insurance protection and pays a premium therefor — such as medical payments — cannot alter the mandatory safeguards that the Legislature considers necessary for the well-being of the citizen drivers of our state. More particularly, a policy provision which the insured considers to be additional protection and for which he pays a premium with such extra protection in mind cannot be transposed by the insurer into a reduction of the mandatory minimum coverage.' " *Shearer*, 53 Ohio St.2d at 7-8, 7 O.O.3d 1, 371 N.E.2d 210. Thus, we held that "[t]he uninsured motorist coverage required to be offered by R.C. 3937.18 in all automobile or vehicle liability policies issued in the state of Ohio cannot be diluted or diminished by payments made to the insured pursuant to the medical payment provision of the same contract of insurance." Id. at syllabus.

{¶ 21} Next, we considered a policy term that provided an insurer a contractual right of subrogation for payments made under the Med Pay portion of an insurance policy. In *Grange Mut. Cas. Co. v. Lindsey*, 22 Ohio St.3d 153, 22 OBR 228, 489 N.E.2d 281, we recognized that if enforced, a subrogation clause, like the setoff provision at issue in *Shearer*, would permit an insurer to contractually alter its insurance policy to escape all or part of its statutory obligation to provide uninsured-motorist coverage. Thus, while recognizing that a subrogation clause permits an insurer to pursue the tortfeasor for amounts paid to

---

2. The Supreme Court of Arizona later overruled *Bacchus v. Farmers Ins. Group Exchange* (1970), 106 Ariz. 280, 475 P.2d 264, in *Schultz v. Farmers Ins. Group of Cos.* (1991), 167 Ariz. 148, 805 P.2d 381, holding that such endorsements may be enforced so long as they do not deprive the insured of full recovery for his or her loss.

the insured, we held that to the extent that such clauses purported to permit an insurer to set off payments it made to its insured for Med Pay coverage against amounts due for UM coverage, they were "void as in derogation of the public policy and purpose underlying R.C. 3937.18." Id. at 155, 22 OBR 228, 489 N.E.2d 281.

{¶ 22} Most recently, in *Berrios v. State Farm Ins. Co.*, 98 Ohio St.3d 109, 2002-Ohio-7115, 781 N.E.2d 149, we rejected an insurer's efforts to enforce a Med Pay subrogation clause against proceeds its insured received from the tortfeasor. Recognizing the mandatory nature of both UM and UIM coverage under former R.C. 3937.18 and the public policy favoring equal treatment of automobile liability policyholders regardless of the tortfeasor's status as an insured, underinsured, or uninsured motorist, we concluded that our holdings in *Shearer* and *Lindsey* applied equally to both UM and UIM coverage. Id. at ¶ 35-38. Accordingly, we held that an insurer could not dilute the statutorily mandated UIM coverage by setting off or subrogating payments made under the Med Pay portion of its policy. Id. at ¶ 39, 43.

**Interpretation of R.C. 3937.18 Subsequent to the Enactment of S.B. 97**

{¶ 23} Subsequent to our decisions in *Shearer* and *Lindsey*, in 2001, the General Assembly enacted S.B. 97, effecting comprehensive changes to Ohio's UM/UIM law. Notably, the enactment eliminated the mandatory offer requirement for UM/UIM coverage, and, consequently, the possibility that UM/UIM coverage could arise by operation of law. See R.C. 3937.18(A) (the insurer "may, but is not required to," include UM/UIM coverage); S.B. 97, Sections 3(B)(1), (2), and (4), 149 Ohio Laws, Part I, 779, 788.

{¶ 24} Additionally, the bill amended former division (J) of R.C. 3937.18, redesignating it as division (I), to provide: "Any policy of insurance that includes uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages may include terms and conditions that

preclude coverage for bodily injury or death suffered by an insured under specified circumstances, *including but not limited to* [certain listed circumstances]." (Emphasis added.) We recognize that none of the specified circumstances include the circumstance in this case of an insurance carrier precluding payment of medical expenses pursuant to UM/UIM coverage if they were paid or are payable under Med Pay coverage. However, it is the nonexclusive language "including but not limited to" that is the focus of our attention.

{¶ 25} Our paramount concern in construing statutes is legislative intent. *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 20; *State ex rel. Russo v. McDonnell*, 110 Ohio St.3d 144, 2006-Ohio-3459, 852 N.E.2d 145, ¶ 37; *State ex rel. Musial v. N. Olmsted*, 106 Ohio St.3d 459, 2005-Ohio-5521, 835 N.E.2d 1243, ¶ 23. We consider the statutory language in context, construing words and phrases in accordance with rules of grammar and common usage. *State ex rel. Stoll v. Logan Cty. Bd. of Elections*, 117 Ohio St.3d 76, 2008-Ohio-333, 881 N.E.2d 1214, ¶ 34. "When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation." *Symmes Twp. Bd. of Trustees v. Smyth* (2000), 87 Ohio St.3d 549, 553, 721 N.E.2d 1057.

{¶ 26} While S.B. 97 does not expressly state the General Assembly's intent to supersede our holdings in *Shearer* or *Lindsey*, it did eliminate the statutory obligation of a carrier to offer UM/UIM coverage, which was the basis of those holdings. Moreover, the legislature broadened the circumstances under which a carrier may preclude coverage for bodily injury or death suffered by an insured, and it expressed its intent to do so by incorporating the phrase "including but not limited to" when referring to the circumstances under which coverage may be precluded.

**{¶ 27}** We have previously recognized that the phrase "including but not limited to" "denotes a nonexclusive list" of examples. *Moore v. Lorain Metro. Hous. Auth.*, 121 Ohio St.3d 455, 2009-Ohio-1250, 905 N.E.2d 606, ¶ 24; *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶14, citing *State v. Thompson* (2001), 92 Ohio St.3d 584, 588, 752 N.E.2d 276, and *State v. Lozano* (2001), 90 Ohio St.3d 560, 562, 740 N.E.2d 273. Thus, the list of circumstances set forth in R.C. 3937.18(I)(1) through (5), in which an insurer may preclude UM/UIM coverage for bodily injury is nonexhaustive.

**{¶ 28}** This provision is different from the prior version of R.C. 3937.18(J), which restricted insurers to precluding UM/UIM coverage for bodily injury in only three circumstances and did not contain the "including but not limited to" language. 2000 Sub.S.B. No. 267, 148 Ohio Laws, Part V, 11380, effective September 21, 2000. As we recognized in *Snyder v. Am. Family Ins. Co.*, 114 Ohio St.3d 239, 2007-Ohio-4004, 871 N.E.2d 574, ¶15, "the 2001 statute for the first time permits policies with uninsured-motorist coverage to limit or exclude coverage under circumstances that are specified in the policy even if those circumstances are not also specified in the statute" and "provide[s] insurers considerable flexibility in devising specific restrictions on any offered uninsured- or underinsured-motorist coverage." Therefore, our precedent construing earlier versions of R.C. 3937.18 based upon the statutory duty imposed on insurance carriers to provide UM/UIM coverage has been superseded by the plain language of the amended statute, which now permits insurance providers to include terms and conditions in their policies that preclude UM/UIM coverage for bodily injury or death suffered by an insured.

**{¶ 29}** The uncodified language of S.B. 97 supports this conclusion. In Section 3(B)(3) of S.B. 97, the General Assembly expressed the public policy of this state to not only eliminate the mandatory offer of UM/UIM coverage, but also to permit insurers to incorporate exclusionary or limiting provisions in their

UM/UIM coverages. 149 Ohio Laws, Part I, 788. Thus, based on express legislative intent, insurers may now include terms and conditions in their policies to limit or exclude UM/UIM coverage.

{¶ 30} Seven appellate districts that have considered the S.B. 97 version of R.C. 3937.18(I) have held that it permits insurers to include limitations and exclusionary clauses in the UM portion of their policies. See *Shenyey v. Glasgow*, Cuyahoga App. No. 91713, 2009-Ohio-1366; *Bousquet v. State Auto Ins. Co.*, Cuyahoga App. No. 89601, 2008-Ohio-922; *O'Connor-Junke v. Estate of Junke*, Cuyahoga App. No. 91225, 2008-Ohio-5874; *Calhoun v. Harner*, Allen App. No. 1-06-97, 2008-Ohio-1141; *Lawrence v. Lawrence*, Coshocton App. No. 06-CA-14, 2007-Ohio-4634; *Wertz v. Wertz*, Huron App. No. H-06-036, 2007-Ohio-4605; *Howard v. Howard*, Pike App. No. 06CA755, 2007-Ohio-3940; *Green v. Westfield Natl. Ins. Co.*, Medina App. No. 06CA25-M, 2006-Ohio-5057; *Kelly v. Auto-Owners Ins. Co.*, Hamilton App. No. C-050450, 2006-Ohio-3599.

{¶ 31} One decision of the Fifth District Court of Appeals, however, reached the opposite conclusion. In *Wayne Mut. Ins. Co. v. Bradley*, Stark App. No. 2005CA00200, 2006-Ohio-1517, the court held that an insurer cannot set off payments made under the Med Pay coverage from UM coverage if it treats the coverages as separate and charges separate premiums for them. Id. at ¶ 35-36. The dispute in *Bradley* arose from a 2004 automobile accident and involved an insurance policy governed by the S.B. 97 version of R.C. 3937.18. Nonetheless, the court in *Bradley* relied upon our holdings in *Shearer*, *Lindsey*, and *Berrios*, all of which construe the pre-S.B. 97 version of the statute, and never addressed the impact of the changes effectuated by S.B. 97.

{¶ 32} We reject the further contention of the insureds that language in the current version of R.C. 3937.18(F) – permitting insurers to include terms and conditions in their policies that preclude stacking of any and all UM/UIM

10

coverages "without regard to any premiums involved" – requires a different result.

{¶ 33} The General Assembly originally enacted R.C. 3937.18(F) in response to our decision in *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809. In *Savoie*, we held that insurers could contractually preclude the intrafamily stacking of UM/UIM coverage limits of policies purchased by family members living in the same household, but could not contractually preclude the interfamily stacking of UM/UIM coverage limits of policies purchased by two or more people who were not members of the same household. Id. at paragraph two of the syllabus. We concluded in *Savoie* that it would be unconscionable to permit insurers to avoid payment of the full policy limits on two unrelated policies for which the insureds paid the full premiums. Id. at 507, 620 N.E.2d 809.

{¶ 34} Expressing its intention to supersede our decision in *Savoie*, the General Assembly enacted Am.Sub.S.B. No. 20, 145 Ohio Laws, Part I, 204, effective October 20, 1994. See Section 9 of the bill, 145 Ohio Laws, Part I, 238. S.B. 20 amended former R.C. 3937.18(G)[3] to permit the inclusion of terms and conditions precluding "any and all stacking" of UM/UIM coverages, "without regard to any premiums involved," including but not limited to intrafamily and interfamily stacking. Id. at 211-212. The language of that amendment supported the General Assembly's intention to permit insurers to limit both forms of stacking.

{¶ 35} Unlike the situation that obtained when the General Assembly enacted S.B. 20, the facts and circumstances surrounding the enactment of S.B. 97 and the language used by the General Assembly in R.C. 3937.18(I) broadly

---

3. Now R.C. 3937.18(F).

11

permit insurance carriers to limit or exclude UM/UIM coverage in their policies and make no distinction on the basis of premiums paid.

{¶ 36} Based upon the foregoing, we hold that R.C. 3937.18(I), as amended by S.B. 97, permits an insurer to limit coverage so as to preclude payment pursuant to UM/UIM coverage for medical expenses that have previously been paid or are payable under the medical payment coverage in the same policy.

{¶ 37} Accordingly, we answer the certified question of state law in the affirmative.

Judgment accordingly.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., concurs separately.

————————————

**PFEIFER, J., concurring.**

{¶ 38} The certified question in this case is: "Does Ohio Revised Code Section 3937.18, as amended in 2001 by S.B. 97 (effective October 31, 2001), permit insurers to include an express limitation of coverage in an automobile insurance policy that precludes payments made under Uninsured/Underinsured Motorist coverage for medical expenses that are paid or payable under the Medical Payments coverage purchased in the same policy?" Based on my reading of R.C. 3937.18, in particular subsection (I), and the analysis contained in the majority opinion, the answer to the certified question must be yes.

{¶ 39} I write separately to emphasize that *Shearer v. Motorists Mut. Ins. Co.* (1978), 53 Ohio St.2d 1, 7 O.O.3d 1, 371 N.E.2d 210; *Grange Mut. Cas. Co. v. Lindsey* (1986), 22 Ohio St.3d 153, 22 OBR 228, 489 N.E.2d 281; and *Berrios v. State Farm Ins. Co.*, 98 Ohio St.3d 109, 2002-Ohio-7115, 781 N.E.2d 149, remain good law, having been neither overturned by this case nor superseded by

12

S.B. 97. Nevertheless, it is quite clear that the General Assembly has abandoned the public policy upon which those three cases were based.

{¶ 40} I cannot say with confidence that the State Farm policy in this case is contrary to public policy or goes beyond what the General Assembly intended to allow. Furthermore, based on the policy language in this case, the exclusion does not present a gap in coverage. See *Clark v. Scarpelli* (2001), 91 Ohio St.3d 271, 276, 744 N.E.2d 719 (the purpose of uninsured-motorist coverage is to eliminate gaps in coverage that could occur because the tortfeasor is uninsured or underinsured). An exclusion that creates a gap in coverage would be contrary to public policy, and nothing in the statutory scheme indicates that by enacting R.C. 3937.18(I), the General Assembly intended to abandon its policy against such gaps.

_____

Baker & Hostetler, L.L.P., Rodger L. Eckelberry, Michael K. Farrell, Mark A. Johnson, and Robert J. Tucker, for petitioners.

Kisling, Nestico & Redick, L.L.C., Gary W. Kisling, Alberto R. Nestico, Robert W. Redick, and Thomas Vasvari; and Feazell & Tighe, L.L.P., and Austin Tighe, for respondent Angela Webb.

Seaman Garson, L.L.C., James DeRoche, and David H. Krause; and Law Offices of Glenn D. Feagan and Glenn D. Feagan, for respondents Laura Grace, Elizabeth Garcia, Ladon Ruffin, and Dorian Jones.

Dworken & Bernstein Co., L.P.A., Patrick J. Perotti, and Nicole T. Fiorelli; and Schottenstein Law Offices and Edwin E. Schottenstein, for respondent Patricia Schwab.

_____