OPINION
{¶ 1} Appellant, Robert K. Liese, appeals from a judgment of the Portage County Court of Common Pleas, denying his motion for summary judgment and instead granting summary judgment to appellee, Kent State University.[1] This matter arises from appellee's termination of appellant's employment, and at issue is whether appellant was an administrative employee with the right to arbitrate his grievance. For the reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} Beginning on or about September 9, 1985, appellant was employed by appellee as a purchasing agent. The relevant job description contained the heading, "ADMINISTRATIVE/PROFESSIONAL JOB DESCRIPTION." According to the job description, the characteristic duties and responsibilities of a purchasing agent included to:
 {¶ 3} "Procure equipment, materials, supplies, leases, and services for the University; obtain competitive quotations from multiple vendors; create purchase orders; expedite deliveries and emergency requests; monitor requests for adherence to purchasing policies and procedures.
 {¶ 4} "Develop and evaluate Requests for Information (RFI); develop, evaluate, and award bids, Requests for Quotations (RFQ), Requests for Proposals (RFP) and Price Agreement/Contracts; monitor existing contracts and price agreements for various commodities.
 {¶ 5} "Act as liaison between University departments and vendors; analyze and recommend processes to resolve concerns and discrepancies; implement actions to ensure University interest is best served.
 {¶ 6} "Interview vendors for product/commodity data; provide commodity and supplier information to departments; communicate federal, state, and University procurement policies, procedures, laws, and regulations to University departments and vendors. * * *"
 {¶ 7} The parties did not enter into any contracts regarding appellant's employment.
 {¶ 8} Appellee maintained two employment policies that were in effect at the time of appellant's employment. Policy No. 3342-6-14 ("Policy 14") was entitled "University policy regarding employment of unclassified administrative officers and staff personnel." This policy explicitly provided for the arbitration of grievances in its subsection (C)(4). The relevant language stated:
 {¶ 9} "(a) If the employee is not satisfied with the decision of the manager of employee relations or designated representative, the employee may, within ten working days after receipt of the reply of the manager of employee relations, request arbitration."
 {¶ 10} Policy No. 3342-6-09 ("Policy 9") was entitled "Administrative policy and procedures regarding grievances of nonteaching unclassified and classified staff." The policy stated that administrative employees served "at the pleasure of the appointing authority * * *" and were employees at will. The policy stated:
 {¶ 11} "Termination of administrative or staff appointees. An administrative appointee not to be continued in his/her administrative position shall be so informed at least ninety days, including weekends and holidays, prior to the date established in the notice as the terminal date of the employee's appointment. The appointing authority of the administrative or staff member shall be the informing agent in an instance where the appointment was issued for a specific term, no notice is required and the last day to that term shall be the terminal date of the employee's appointment. University policy regardingnonacademic grievance, rule 3342-6-14 of the Administrative Code,is not applicable in cases of administrative termination." (Emphasis added.) Accordingly, Policy 9 did not provide for arbitration and instead set forth a practice related to termination.[2]
 {¶ 12} Policy 9 also specified that "[t]he employee may be required to take accumulated unused vacation time during this ninety-day period." (Emphasis added.)
 {¶ 13} Neither policy defined who qualified as an administrative employee. Despite this, appellant admitted during his deposition that he was an administrative employee. He testified:
 {¶ 14} "Q: * * * Given that the administrative or the job description for your particular job with Kent State, that of Purchasing Agent, would you agree that you were considered an administrative employee?
 {¶ 15} "A: That's what we're called."
 {¶ 16} Appellant further testified:
 {¶ 17} "Q: Well, in parlance of Kent State University, were you considered an administrative employee?
 {¶ 18} "A: As far as they were concerned I was. * * * That was the classification where I was supposedly in."
 {¶ 19} Appellant also admitted he was an at-will employee of appellee.
 {¶ 20} Appellant received a letter, dated January 29, 2001, advising him that he would be terminated from his position effective April 29, 2001. The letter provided no explanation for his termination.[3] Appellant did not have to report to work between January 29, 2001 and April 29, 2001. Appellant admitted in his deposition that he received pay from January 29, 2001 to April 29, 2001, and he was compensated for his unused vacation time.[4] Nothing in the record reveals whether appellant was compensated for any unused sick time.
 {¶ 21} Appellant admitted that appellee followed, and in no way violated, the provisions of the policy governing unclassified administrative staff when implementing his termination.
 {¶ 22} Despite his admission that he was classified as an administrative employee, appellant believed the duties he performed were not administrative but rather those of a clerk. Further, although he admitted he was an at-will employee, appellant thought he could not be terminated without cause. Appellant thus believed his termination fell within the staff policy and that he was entitled to arbitrate his grievance.
 {¶ 23} In accord with Policy 14 governing staff grievances, appellant filed a complaint form with Flasko, to commence his grievance process. In this complaint form, appellant stated, "[t]he contents of the 1-29-01 termination letter * * * is [sic] inaccurate, unsubstantiated, a fabrication and improper. I was never disciplined, advised that I violated any University policies, procedures and/or practices as a purchasing agent, and received no counseling, warnings, and/or advice of any nature whatsoever, and believe I am merely being removed from the position through the termination process as a result of a conscious effort to downsize the department."[5]
 {¶ 24} Having received no reply, appellant retained counsel who communicated to appellee by letter, dated February 16, 2001, demanding that appellee hold proceedings in accord with Policy 14 governing staff. Although it does not appear in the record, the parties do not dispute that appellee refused to hold such proceedings.
 {¶ 25} Pursuant to R.C. 2711.03, appellant filed a complaint with the trial court on March 16, 2001, to enforce the arbitration clause outlined in the policy governing staff. Appellant demanded a jury trial. Appellee moved to dismiss appellant's complaint on June 21, 2001. Appellee argued that the complaint should be dismissed because the Court of Claims had exclusive jurisdiction over civil actions against the state for money damages. The trial court overruled appellee's motion on October 10, 2001.
 {¶ 26} On October 31, 2001, appellee appealed from the trial court's October 10, 2002 judgment entry. On November 26, 2001, appellant filed a motion to dismiss that appeal due to a lack of a final appealable order. Appellee filed a brief in opposition to this motion, to which appellant replied. On March 4, 2002, this court granted appellant's motion to dismiss appellee's appeal, as the October 10, 2002 judgment entry was not a final appealable order.
 {¶ 27} Both parties moved for summary judgment on November 15, 2002. Appellee replied to appellant's motion on December 11, 2001, and appellant replied to appellee's motion the next day.
 {¶ 28} In an order, dated March 7, 2003, the trial court denied appellant's motion and granted summary judgment in favor of appellee. In its judgment entry, the trial court reviewed the facts relevant to the matter. The trial court then stated that "[i]t is clear that [appellant's] position was among the unclassified administrative staff. * * * Therefore, [appellant] has no right to require the University to arbitrate issues involving his termination.
 {¶ 29} "[Appellant] principally takes a functional approach in determining his classification, focusing on the work he actually performed in his position. [Appellant] relies on the standards set out in the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. Section 201, et seq., in determining whether the position of purchasing agent was an unclassified administrative position or a non-teaching unclassified position under the [appellee's] system of employee classification. Frankly, this federal law has no application to the present controversy. FLSA was enacted to ensure that workers were not shorted on overtime pay. Although some employees of [appellee] may enjoy the protections of FLSA, such federal statute cannot bind the [appellee] in establishing a system of personnel classification. FLSA has no applicability to the issue presented here.
 {¶ 30} "At bottom, the issue is the extent of [appellee's] right to establish a system of personnel classification of its employees."
 {¶ 31} The trial court then concluded that, upon review and consideration of the motions, pleadings, depositions, and affidavits, there existed no genuine issue of material fact, and appellee was entitled to judgment as a matter of law.
 {¶ 32} From this judgment, appellant appeals and asserts the following two assignments of error:
 {¶ 33} "[1.] The Trial Court Erred as a Matter of Law in Granting Summary Judgment in Favor of [appellee], in Holding That [appellant's] Position with [appellee] Was that of an Administrative Employee.
 {¶ 34} "[2.] The Trial Court Erred as a Matter of Law in Failing to Conduct a Hearing in [appellant's] Claim for Arbitration."
 {¶ 35} Before addressing the merits of appellant's two assignment's of error, we will review R.C. 2711.03, under which appellant requested relief. R.C. 2711.03(A) provides:
 {¶ 36} "The party aggrieved by the alleged failure of another to perform under a written agreement for arbitration may petition any court of common pleas * * * for an order directing that the arbitration proceed in the manner provided for in the written agreement. The court shall hear the parties, and, upon being satisfied that the making of the agreement for arbitration or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration * * *." (Emphasis added.)
 {¶ 37} Likewise, "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Steelworkers v. Warrior Gulf Nav. Co. (1960), 363 U.S. 574, 582. "The scope of an arbitration clause, that is whether a controversy is arbitrable under the provisions of the contract, is a question for the court to decide upon examination of the [agreement.]" Divine Constr.Co., Inc. v. Ohio-American Water Co. (1991), 75 Ohio App.3d 311,316, citing Gibbons-Grable Co. v. Gilbane Building Co. (1986),34 Ohio App.3d 170.
 {¶ 38} A trial court is thus required to hear the parties to determine if the issue is subject to an arbitration agreement.[6] If the issue is indeed arbitrable, the court must order the parties to proceed to arbitration. When a trial court finds, after hearing the parties, that the making of an arbitration agreement is at issue and the existence orapplicability of an arbitration agreement is disputed, the matter falls under R.C. 2711.03(B). R.C. 2711.03(B) requires that, when the existence of applicability of an arbitration clause is in dispute, "* * * the court shall proceed summarily to a trial of [the] issue [of whether the agreement existed and/or applied to the plaintiff]."
 {¶ 39} In other words, only a party which raises a material issue of fact as to whether there was an enforceable and applicable arbitration provision is entitled to an actual trial.Ison v. State Farm Mut. Auto Ins. Co., 148 Ohio App.3d 465,2002-Ohio-3762, at ¶ 36. "`When determining whether a trial is necessary under R.C. 2711.03, the relevant inquiry is whether a party has presented sufficient evidence challenging the validity or enforceability [or applicability] of the arbitration provision to require the trial court to proceed to trial before refusing to enforce the arbitration clause.'" McDonough v. Thompson, 8th Dist. No. 82222, 2003-Ohio-4655, at ¶ 13, quoting Garcia v.Wayne Homes, LLC, 2nd Dist. No. 2001 CA 53, 2002 Ohio App. LEXIS 1917, 2002-Ohio-1884, at 20-21. See, also, Ison at ¶ 35.
 {¶ 40} Summary judgment proceedings allow the parties to be heard. Summary judgment is "* * * a procedural device designed to terminate litigation and to avoid a formal trial where no issues exist for a trial." Griffith v. Linton (1998),130 Ohio App.3d 746, 753, citing Norris v. Ohio Std. Oil Co. (1982),70 Ohio St.2d 1, 2. Accordingly, it is well-settled that summary judgment is a proper mechanism by which a trial court can hear the parties and determine whether an arbitration clause is applicable to a given dispute.
 {¶ 41} For example, in Serv. Employees Internatl. Union,Local 47 v. Cleveland Neighborhood Health Services., Inc.
(1996), 110 Ohio App.3d 328, the plaintiff filed a complaint/petition to compel arbitration of an employment dispute pursuant to R.C. 2711.03. The parties filed cross-motions for summary judgment as to whether the plaintiff's grievance was covered by the arbitration clause in the collective bargaining agreement. The trial court granted summary judgment to the plaintiff after finding that there existed no genuine issues of material fact that the plaintiff's grievance was covered by the arbitration clause. The Eighth District Court of Appeals reversed, concluding that the grievance was not covered by the arbitration clause. See, also, Tye v. Bd. of Edn. of the PolarisJoint Vocational School Dist. (1988), 44 Ohio App.3d 76, (In an action to compel arbitration under R.C. 2711.03, summary judgment can be awarded when no genuine issue of material fact exists as to whether the plaintiff's claim is arbitrable.).
 {¶ 42} For the sake of clarity, we will examine appellant's second assignment of error before addressing his first assignment of error. In appellant's second assignment of error, he argues that the trial court erred by failing to conduct a hearing on his claim for arbitration. Specifically, appellant argues that the trial court erred and failed to follow the requirements set forth in R.C. 2711.03 by deciding the matter on dispositive motions rather than conducting an oral evidentiary hearing on the issue. We disagree.
 {¶ 43} As an initial matter, we note that appellant never requested an oral hearing on the matter. While a party's request for an oral hearing shall be granted pursuant to R.C. 2711.03, an oral hearing is not mandatory absent a request. See, e.g., Crossv. Carnes (1998), 132 Ohio App.3d 157, 166. Accordingly, the trial court did not err by failing to conduct an oral hearing on his claim because the issue was never before the court.
 {¶ 44} Further, both parties moved for summary judgment. By filing his own motion for summary judgment, appellant effectively waived his right to an oral hearing and consented to the court's disposal of the issue on summary judgment. "`As a general rule, the doctrine of waiver is applicable to all personal rights and privileges, whether secured by contract, conferred by statute, or guaranteed by the Constitution * * *.'" Sanit. CommercialServices, Inc. v. Shank (1991), 57 Ohio St.3d 178, 180-181, quoting State ex rel. Hess v. Akron (1937), 132 Ohio St. 305,307. As such, it is well-settled that a person may waive rights and privileges secured by statute, including the statutory right to a hearing conferred by R.C. 2711.03.
 {¶ 45} It is therefore clear that appellant waived his right to an oral hearing by moving for summary judgment. In the same instance, however, appellant allowed himself to be heard on the issue, as was required by R.C. 2711.03. The trial court conducted a non-oral hearing on the parties' motions for summary judgment on approximately December 19, 2002. In its March 7, 2003 judgment entry, the trial court determined that there existed no genuine issues of material fact and that appellee was entitled to judgment as a matter of law. Although an oral hearing was never conducted, the non-oral hearing allowed the parties to be heard, as required by R.C. 2711.03.
 {¶ 46} Accordingly, appellant was not entitled to an oral hearing on the matter because he never requested an oral hearing. Appellant also waived his right to an oral hearing by moving for summary judgment, and he thus consented to the trial court's disposal of the issue on summary judgment. Despite this, the summary judgment proceedings enabled appellant to be heard. The trial court thus complied with the dictates of R.C. 2711.03, and appellant's second assignment of error is without merit.
 {¶ 47} In appellant's first assignment of error, he argues that the trial court erred by granting summary judgment to appellee and by denying his own motion for summary judgment. We disagree.
 {¶ 48} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio EdisonCo., 77 Ohio St.3d 102, 105, 1996-Ohio-336. Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach only one conclusion, which is adverse to the party against whom the motion is made, such party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C);Mootispaw v. Eckstein, 76 Ohio St.3d 383, 385, 1996-Ohio-389;Leibreich v. A.J. Refrigeration, Inc., 67 Ohio St.3d 266, 268,1993-Ohio-12; Bostic v. Connor (1988), 37 Ohio St.3d 144, 146.
 {¶ 49} Material facts are those facts that might affect the outcome of the suit under the governing law of the case. Turnerv. Turner, 67 Ohio St.3d 337, 340, 1993-Ohio-176, citingAnderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 248. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340.
 {¶ 50} A party seeking summary judgment on the grounds that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. Dresher v. Burt,75 Ohio St.3d 280, 1996-Ohio-107. Accordingly, the moving party must specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Id. If the moving party satisfies its initial burden under Civ.R. 56(C), the nonmoving party has the reciprocal burden to respond, by affidavit or as otherwise provided in the rule, so as to demonstrate that there is a genuine issue of fact. Id. However, if the nonmoving party fails to do so, then the trial court may enter summary judgment against that party. Id.
 {¶ 51} We now turn to the merits of appellant's first assignment of error. Appellant contends he was an administrative employee, and the trial court thus erred by denying his own motion and granting summary judgment to appellee. Specifically, appellant argues that because neither appellee's staff policy nor appellee's unclassified administrative policy defined who qualified as an administrative employee, we must look to outside sources to aid that determination. Appellant suggests the Fair Labor Standard Act ("FLSA") and its definitions are controlling. We agree with the trial court that the FLSA has no application to this matter, and appellee was free to establish its own classification of employees. Further, our review of the record reveals that appellant was an administrative employee, and the trial court did not err by denying appellant's own motion and by granting summary judgment to appellee.
 {¶ 52} According to appellee's own classification of employees, as evidenced by appellant's job description, appellant was a member of appellee's unclassified administrative staff. Appellant even admitted his administrative classification in his deposition. Reading the two policies harmoniously in pari materi, it is apparent that appellant, as an administrative employee, was not entitled to arbitrate his grievance. Policy 9 governing administrative employees explicitly stated that the termination provisions outlined in Policy 14, governing staff, were not applicable to administrative termination. We therefore conclude that Policy 9 did not provide for arbitration and instead set forth a practice related to termination, and appellant was not entitled to arbitrate his grievance. Thus, there existed no genuine issue of material fact, and appellee was entitled to judgment as a matter of law on appellant's first assignment of error.
 {¶ 53} Even if we apply the definitions outlined in the FLSA, appellant was an administrative employee. According to the FLSA, an administrative employee is one: (1) whose primary duty consists of the performance of office work directly related to management policies or general business operations of his employer or his employer's customers; (2) who customarily and regularly exercises discretion and independent judgment; and (3) who executes under only general supervision special assignments and tasks. Section 541.201-202, Title 29, C.F.R.
 {¶ 54} Clearly from appellant's job description appellant performed office work that was directly related to appellee's general business operations. Appellant was responsible for soliciting bids and entering into contracts that bound appellee for products and services. Despite appellant's contentions otherwise, this constitutes appellee's general business.
 {¶ 55} Further, it is apparent that appellant customarily and regularly exercised discretion and independent judgment. Appellant used his discretion to analyze whether to accepting a certain bid and entering into a contract with a given vendor was appropriate and in appellee's best interest.
 {¶ 56} The record also reveals that appellant performed special tasks under only general supervision. Appellant's job description states that he was to "[d]evelop and evaluate Requests for Information (RFP); develop, evaluate, and award bids, Requests for Quotations (RFQ), Requests for Proposals (RFP), and Price Agreement/Contracts; monitor existing contracts and price agreements for various commodities." In performing these special tasks, appellant had to be familiar with federal, state, and appellee's policies. He himself was responsible for resolving concerns and implementing actions to ensure appellee was best served.
 {¶ 57} Although appellant would like us to believe otherwise, appellant would be considered appellee's administrative employee and would not be entitled to arbitrate his grievance even if the FLSA applied to this matter. However, the FLSA was not controlling here, and appellant's own job description and admissions were dispositive. Accordingly, there existed no genuine issue of material fact that appellant was an unclassified administrative employee of appellee and not entitled to arbitrate his grievance. Appellee was entitled to judgment as a matter of law, and the trial court correctly awarded summary judgment to appellee. Appellant's first assignment of error is without merit.
 {¶ 58} In conclusion, appellant's two assignments of error are without merit. The trial court did not err by denying appellant's motion for summary judgment and granting summary judgment to appellee or by failing to hold an oral hearing on the matter. We hereby affirm the judgment of the trial court.
Grendell, J., concurs in judgment only, O'Neill, J., dissents with Dissenting Opinion.
[1] Kent State University Office of the President and David K. Creamer, Vice President for Business and Finance at Kent State University, were also named as defendant-appellees in this matter. For the sake of clarity, we will refer to appellee Kent State University as inclusive of all appellees in this matter.
[2] Our review of the policies in pari materi imparts a clear intent on behalf of appellee that only staff employees, and not administrative employees, were entitled to arbitrate termination grievances.
[3] Appellant received a memo from his immediate supervisor, John Flasco ("Flasco"), dated April 17, 2000, commenting on his poor performance when handling a relocation of a family to Kent, Ohio. In this memo, Flasco concluded, "[t]his is an example of a common complaint that I have heard too many times since I have been here. Do I have to work with Bob Liese because he is no help at all and I end up doing the work myself? * * * Bob, this is a serious situation that must be addressed immediately. I will work with you to assist in that improvement effort, but the change must come from within you. Failure to make an immediate and dramatic improvement will effect [sic] your employment future at Kent State University." Despite this warning, appellant received a poor performance evaluation in June 2000. On a scale of one to ten, appellant received a 4.1. Appellant also admitted in his deposition that he fell asleep at work in July 2000.
[4] In his deposition, appellant testified that did not cash the check which was in lieu of his unused vacation time; he turned the check over to his counsel.
[5] Appellant admitted he was an at-will employee of appellee.
[6] "A `hearing' means any confrontation, oral or otherwise, between an affected individual [and a decisionmaker] sufficient to allow the individual to present the case in a meaningful manner. Hearings may take many forms, including a `formal,' trial-type proceeding, an `informal discuss(ion)' * * *, or a `paper hearing,' without any opportunity for oral exchange."Gray Panthers v. Schweiker (C.A.D.C., 1980), 652 F.2d 146, fn.3.