MARY J. BOYLE, J.:
*1275 {¶ 1} Defendants-appellants, Cleveland Municipal School District Board of Education ("CMSD" or the "Board") and its chair, Denise Link ("collectively appellants"), appeal from the trial court's order concluding that plaintiffs-appellees, 12 teachers employed by CMSD who did not have their contracts renewed at the end of the 2013-2014 school year ("teachers"), did not receive an adequate hearing under R.C. 3311.81.[1] The appellants raise two assignments of error for our review:
1. The trial court erred in determining that Plaintiffs did not receive an adequate hearing before the Board pursuant to R.C. 3311.81(C).
2. The trial court erred in interpreting R.C. 3311.81(C) to require hearing procedures that are not present in the language of the statute.
{¶ 2} Finding merit to CMSD's assignments of error, we reverse.
I. Procedural History and Factual Background
{¶ 3} In June 2012, the Ohio General Assembly passed H.B. 525, titled, "The Cleveland Plan for Transforming Schools" ("the Cleveland Plan"), which sought to remedy a myriad of issues facing CMSD schools.[2] Involved in the creation of the Cleveland Plan were CMSD officials, the Cleveland Teachers Union ("CTU"), and Cleveland Mayor Frank Jackson. As part of the Cleveland Plan, the Ohio Legislature passed R.C. 3311.81, which created new procedures for limited contract teachers, including changes to the nonrenewal process, appellate procedures, and collective bargaining. Additionally, as part of the discussions concerning the Cleveland Plan, CTU and CMSD negotiated changes to the collective-bargaining agreement between them, including changes to nonrenewal and evaluation procedures, which went into effect on July 1, 2013 ("the collective-bargaining agreement").
*1276 {¶ 4} Under the collective-bargaining agreement, a teacher could receive a limited contract, a continuing contract, or an extended limited contract. The collective-bargaining agreement stated that " 'limited contract' means a limited contract that the board of education enters into with a teacher who is not eligible for a continuing contract." According to the agreement, "[a]ny teacher employed under a limited contract who is not eligible to be considered for a continuing contract is, at the expiration of such limited contract, considered re-employed under a one-year limited contract, unless the board gives such teacher written notice of its intention not to re-employ such teacher."
{¶ 5} The following procedures for the nonrenewal of a limited contract teacher were set forth in R.C. 3311.81 and the collective-bargaining agreement:
A. The following only applies upon the expiration of a teacher's limited or extended limited contract.
B. Prior to the board giving written notice to a teacher of its intention not to re-employ such teacher, the following shall apply:
1. The evaluation process, as outlined in Article 13, must have been completed.
2. The Principal/Administrator shall provide the teacher with notice of his/her recommendation that the teacher not be re-employed, with a copy to the Union and the Academic Superintendent.
3. The Academic Superintendent shall hold a hearing with the teacher, CTU representative, and Principal/Administrator. Following the hearing, the Academic Superintendent shall transmit his or her recommendation to the [Chief Executive Officer ("CEO") ], with a copy to the employee and the CTU.
4. If a recommendation for non re-employment is made by the Academic Superintendent or if the CEO intends to recommend non reemployment to the Board, the teacher shall be entitled to a hearing before the CEO or his/her designee, with CTU representation, prior to any recommendation to the Board.
5. The CEO shall make a recommendation to the school board. A copy of the recommendation shall be issued to the teacher and CTU.
6. On or before June 1 of the year that the teacher's limited or extended limited contract expires, the board must give a teacher written notice of its intention not to re-employ the teacher. A copy shall be provided to the CTU.
7. Any teacher receiving written notice of the intention of the board not to re-employ such teacher pursuant to this section may request a hearing before the board. * * * The hearing shall be held in executive session of the board at the board's next scheduled meeting. Following the hearing, or if no hearing is requested, the board shall act on the question of the teacher's re-employment. The decision of the board shall be final and shall not be subject to further appeal.
{¶ 6} During her deposition, Link explained that under the Cleveland Plan, nontenured teachers that were nonrenewal were identified "through their evaluation process with their principals[.]" Further, according to Link, the purpose of the hearing with the teacher's academic superintendent is to "determine if they should move forward with the nonrenewal, or if the teacher should go back to possibly corrective action[.]" If the academic superintendent supports nonrenewal, the teacher then has the right to a second hearing, with his or her CTU representative present, before CMSD's CEO or the CEO's designee. Link explained that during the second hearing,
*1277 the other administrators, [including] the principal and the academic superintendent, * * * are not present * * * so the teacher has [his or her] chance to voice [his or her] opinion without fear of retribution from [the] principal for their management [and] * * * can have [his or her] opportunity to be heard without any interruptions.
If CMSD's CEO recommends nonrenewal, a limited contract teacher is then allowed to request a hearing before the Board.
{¶ 7} The teachers involved in this case were limited contract teachers in CMSD schools during the 2013-2014 school year. At the end of the school year, the teachers were each notified that their principals intended not to renew their contracts for the following year. As required under the collective-bargaining agreement between CTU and CMSD - particularly, in the section titled, "CTU-Bargained Due Process Procedures" - the teachers each (1) received written recommendations of nonrenewal from their principals, (2) had a hearing with their academic superintendents with the teachers' CTU representatives and principals/administrators present, (3) received a written recommendation of nonrenewal from the academic superintendent, and (4) had a hearing with CMSD's CEO or the CEO's designee, which ended in a recommendation of nonrenewal to the Board.
{¶ 8} After the teachers received the CEO's recommendations for nonrenewal, they requested "(1) an explanation in writing as to why their contracts were not being renewed, and (2) a hearing to challenge CMSD's decision not to renew their contracts" with the Board. Burnell v. Cleveland Mun. School Dist. Bd. of Edn. , 8th Dist. Cuyahoga No. 103069, 2015-Ohio-5431, 2015 WL 9461719, ¶ 3. As a result, Link, the Board's chair,
scheduled a hearing at the next regularly scheduled meeting and established rules for the hearing. Pursuant to Link's rules, each teacher, and his or her representative, were afforded 20 minutes to present an oral argument. Each of the teachers' principals and other administrators who recommended that his or her limited contract not be renewed, were present at the hearing, but the teachers were not permitted to question them.
Id. at ¶ 4.
{¶ 9} When asked about how the format of the hearings was determined, Link explained that, after conferring with her vice chair, Link herself decided the format.[3] Link also explained that, per the rules she established, each teacher was only allowed to bring one person in the room with him or her and was not allowed to bring in witnesses during the hearing with the Board. The Board removed any additional persons from the room. She also said that each teacher's principal, CEO designee, and academic superintendent were present at the hearing. Link also explained that, after the teacher presented his or her oral argument for renewal and left the room, the Board went into executive session, where it had the opportunity to ask the CEO questions, such as how long the teacher worked for the district, and if the CEO did not know the answer, the CEO would defer the question to the teacher's principal or academic superintendent. After all of the teachers presented their oral *1278 arguments and the Board returned to public session,
the Board moved to adopt a resolution not to re-employ all 12 of the limited contract teachers, and the resolution passed.
Appellants subsequently filed a complaint for declaratory judgment against CMSD, alleging CMSD deprived appellants of their statutory right to a hearing before voting not to renew their contracts. Appellants alleged they were denied a hearing because they were not permitted to present evidence, cross-examine witnesses, or respond to the evidence and arguments made against them.
Id. at ¶¶ 5-6.
{¶ 10} Appellants filed a motion to dismiss arguing that the trial court lacked jurisdiction because R.C. 3311.81, the statute governing CMSD teacher contracts, states that school board decisions "shall be final and shall not be subject to further appeal[.]" The trial court granted appellants' joint motion, and the teachers appealed.
{¶ 11} On appeal, we found that "[a]lthough R.C. 3311.81(C) states that a school board's decision is final and not subject to appeal, nothing prevents aggrieved limited contract teachers from bringing an action to enforce their right to a hearing under R.C. 3311.81(B)." Id. at ¶ 11. We found that the teachers' declaratory judgment action was an appropriate method to enforce their rights under R.C. 3311.81. Id. at ¶¶ 11-14. However, we also concluded that the trial court "lacks jurisdiction to review the Board's decision not to renew the teachers' contracts." Id. at ¶ 15. As a result, we affirmed in part and reversed in part and "remanded [the case] to the trial court to conduct a hearing to determine whether [appellants] complied with the hearing requirements of R.C. 3311.81(C)." Id. at ¶ 20.
{¶ 12} Upon remand, the trial court, without holding a hearing, issued a judgment entry, finding that the teachers "had an adequate hearing as required by R.C. 3311.81(C)." The teachers again appealed, and we vacated the trial court's judgment and remanded the case to the trial court based on the trial court's failure to follow our mandate - namely, failing to hold a hearing to determine whether a hearing under R.C. 3311.81 took place. Burnell v. Cleveland Metro. School Dist. , 8th Dist. Cuyahoga No. 104447, 2016-Ohio-7406, 2016 WL 6139135, ¶¶ 10-11.[4]
{¶ 13} Upon remand, the parties submitted prehearing briefs, exhibits, and transcripts, and the trial court held a hearing in September 2017, during which the parties presented oral arguments. In November 2017, the trial court issued a judgment entry finding that the teachers "did not have an adequate hearing as required by R.C. 3311.81(C)." The trial court's judgment entry stated,
This matter is remanded to the [CMSD] for the limited purpose of conducting hearings for each individual plaintiff and voting on whether to renew each plaintiff. Procedurally, hearings shall include, but are not limited to, the following: Each plaintiff is to be given copies of the evidence considered by the Board. Each plaintiff is to have an opportunity to ask questions of their principal, their academic superintendent, and their CEO designee. Each plaintiff is to be present in the room when arguments against *1279 them are presented and have an opportunity to rebut those arguments.
{¶ 14} It is from this judgment that appellants now appeal.
II. Law and Analysis
{¶ 15} In their first assignment of error, the appellants argue that the trial court erred when it found that the teachers did not receive an adequate hearing pursuant to R.C. 3311.81(C).
{¶ 16} This appears to be a case of first impression. The central issue is determining what due process procedures limited contract teachers are provided under R.C. 3311.81. More particularly, the issue on which the parties disagree is the type of hearing that R.C. 3311.81 requires. The teachers argue that R.C. 3311.81 requires an evidentiary hearing where he or she can call witnesses and present evidence. The appellants argue that the statute does not require an evidentiary hearing and that permitting the teachers an opportunity to present an oral argument constitutes a hearing for purposes of R.C. 3311.81. The appellants argue that under the new nonrenewal process under R.C. 3311.81 and the collective-bargaining agreement, it acts similar to an appellate court, reviewing the lower decisions of the academic superintendent and CEO and is not supposed to provide the teachers with another opportunity to present evidence.
{¶ 17} R.C. 3311.81, which became effective in October 2012, states in pertinent part,
(B) The board of education of each municipal school district shall enter into a limited contract with each teacher employed by the board who is not eligible to be considered for a continuing contract.
Any teacher employed under a limited contract who is not eligible to be considered for a continuing contract is, at the expiration of such limited contract, considered re-employed under a one-year limited contract, unless the board gives such teacher written notice of its intention not to re-employ such teacher on or before the first day of June. The teacher is presumed to have accepted such employment unless the teacher notifies the board in writing to the contrary on or before the tenth day of July.
Any teacher receiving a written notice of the intention of the board not to re-employ such teacher pursuant to this division is entitled to a hearing under division (C) of this section.
(C) Any teacher receiving written notice of the intention of the board not to re-employ such teacher pursuant to division (B) of this section may request a hearing before the board. The request for a hearing shall be in writing and shall be delivered to the chief financial officer of the district within ten days of the date of receipt of the notice. The hearing shall be held in executive session of the board at the board's next scheduled meeting. Following the hearing, or if no hearing is requested, the board shall act on the question of the teacher's re-employment. The decision of the board shall be final and shall not be subject to further appeal.
* * *
(F) Notwithstanding any provision to the contrary in Chapter 4117 of the Revised Code, the requirements of this section prevail over any conflicting provisions of a collective bargaining agreement entered into on or after the effective date of this section. However, the board and the teachers' labor organization shall negotiate the due process procedures preceding a teacher's receipt of a written notice indicating the intent of the board not to re-employ the teacher, *1280 which procedures shall be consistent with this section.
{¶ 18} The statute does not define "hearing," which is the essential term in this case. However, we have previously noted that a "hearing" is
"any confrontation, oral or otherwise, between an affected individual and a decision[-]maker sufficient to allow the individual to present the case in a meaningful manner. Hearings may take many forms, including a formal, trial-type proceeding, an informal discussion, or a paper hearing, without any opportunity for oral exchange."
(Internal quotations omitted.) Marks v. Morgan Stanley Dean Witter Commercial Fin. Servs. , 8th Dist. Cuyahoga No. 88948, 2008-Ohio-1820, 2008 WL 1747224, ¶ 29, quoting Liese v. Kent State Univ. , 11th Dist. Portage No. 2003-P-0033, 2004-Ohio-5322, 2004 WL 2801698.
{¶ 19} When reviewing questions of statutory interpretation, our standard of review is de novo. Electronic Classroom of Tomorrow v. Ohio Dept. of Edn. , --- Ohio St.3d ----, 2018-Ohio-3126, --- N.E.3d ----, ¶ 11.
When considering the meaning of a statute, our " 'paramount concern is the legislative intent' of its enactment." State ex rel. Steffen v. Judges of the Court of Appeals for the First Appellate Dist. , 126 Ohio St.3d 405, 2010-Ohio-2430, 934 N.E.2d 906, ¶ 30, quoting State ex rel. Steele v. Morrissey , 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. Because a statute must be considered as a whole, "a court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body." State v. Wilson , 77 Ohio St.3d 334, 336, 1997-Ohio-35, 673 N.E.2d 1347 (1997). When considering the four corners of an enactment, we "consider the statutory language in context, construing words and phrases in accordance with rules of grammar and common usage." State Farm Mut. Auto. Ins. Co. v. Grace , 123 Ohio St.3d 471, 2009-Ohio-5934, 918 N.E.2d 135, ¶ 25. Provided that "[t]he meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary." State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn. , 74 Ohio St.3d 543, 545, 1996-Ohio-291, 660 N.E.2d 463 (1996).
Id.
{¶ 20} Concerning principles of statutory interpretation, we must first address whether R.C. 3311.81 is remedial in nature, and therefore, requires us to give a liberal construction of the statute in favor of the teachers. See Naylor v. Cardinal Local School Dist. Bd. of Edn. , 69 Ohio St.3d 162, 630 N.E.2d 725 (1994) ("In resolving the instant appeal, we are guided by the standard that R.C. 3319.11 and 3319.111 are remedial statutes that must be liberally construed in favor of teachers. R.C. 1.11.").
{¶ 21} " '[A] statute undertaking to provide a rule of practice, a course of procedure or a method of review, is in its very nature and essence a remedial statute.' * * * Rather than addressing substantive rights, remedial statutes involve procedural rights or change the procedure for effecting a remedy." Euclid v. Sattler, 142 Ohio App.3d 538, 540, 756 N.E.2d 201 (8th Dist.2001), quoting Miami v. Dayton, 92 Ohio St. 215, 110 N.E. 726 (1915).
{¶ 22} Here, like R.C. 3319.11, R.C. 3311.81 involves procedural rights, including the rights that a teacher has when the CMSD and its officials decide not to renew his or her contract. As a result, we find that R.C. 3311.81 is remedial in nature, *1281 and therefore, we will give a liberal construction of the statute in favor of the teachers.
{¶ 23} With this conclusion in mind, we turn to the case's central issue - interpretation of "hearing" under R.C. 3311.81. The teachers cite Naylor in support of their position that "hearing" means an evidentiary hearing. In that case, the appellant-teacher, who was on a limited contract, appealed the school district board of education's decision not to renew her contract, arguing that the board failed to comply with R.C. 3319.11, the statute that still covers non-CMSD school districts in Ohio and pertains to the non-reemployment of limited contract teachers.[5] Specifically, the appellant argued that the Board did not provide her a written statement describing the circumstances that led to the board's intention not to re-employ her and "had not provided her with the type of hearing contemplated by R.C. 3319.11." Naylor , 69 Ohio St.3d 162, 630 N.E.2d 725, at syllabus. The Ohio Supreme Court began its analysis by recognizing that R.C. 3319.11 is a remedial statute "that must be liberally construed in favor of teachers. R.C. 1.11." Id. at 164, 630 N.E.2d 725. As to the board's failure to provide the appellant with a written statement, the court said,
The board's statement does not describe any circumstances explaining how it arrived at its decision [and] is merely conclusory and leaves plaintiff groping for answers as to why she was not offered a continuing contract. If R.C. 3319.11(G)(2) is to have any meaning whatsoever, the written statement from the board must provide the teacher with an explanation of why his or her employment contract is not being renewed. Therefore, we hold that R.C. 3319.11(G)(2) requires a board of education to provide a teacher under a limited contract a clear and substantive basis for its decision not to reemploy the teacher for the following school year.
Id. at 167, 630 N.E.2d 725.
{¶ 24} As to whether the board in Naylor gave the appellant an adequate hearing, the appellant argued that the hearing she received was not adequate because "the term 'hearing' includes the presentation of evidence, confrontation and examination of witnesses and the review of the argument of the parties." Id. In response, *1282 the Board argued that R.C. 3319.11(G)(5) did not require a full evidentiary hearing. The court agreed with the appellant and found that "the General Assembly intended a more thorough and formal proceeding than that which was accorded to plaintiff." Id. at 168, 630 N.E.2d 725. It stated,
If the General Assembly had intended to restrict a nontenured teacher's right to the simple recitation of a position statement, it could have easily done so by use of another phrase, such as "presentation of argument" or "oral argument." In our view, the requirements of R.C. 3319.11(G)(5) envision more than an informal session between a school board and the teacher, where the teacher makes a verbal presentation protesting nonrenewal of his or her contract. The General Assembly must have intended more in light of the elaborate and comprehensive procedures appearing in R.C. 3319.11, as amended. R.C. 3319.11(G)(5) * * * speak[s] of a "hearing" and an "order," words clearly suggesting a proceeding that possesses some formality, especially in light of the liberal construction standard which must be applied to this remedial statutory scheme.
Id. The court continued, stating that "the legislature intended ['hearing'] to be given its ordinary meaning, to provide some measure of security to the nontenured teacher faced with the possibility of nonrenewal of his or her teaching contract." Id. at 168-169, 630 N.E.2d 725. As a result, the court concluded that "the hearing provided teachers under limited contracts * * * necessarily includes the presentation of evidence, confrontation and examination of witnesses and the review of the arguments of the parties." Id. at 169, 630 N.E.2d 725.
{¶ 25} After review, we find that Naylor - as well as the cases interpreting R.C. 3311.19 and involving nonmunicipal school districts to which the teachers cite-is distinguishable and noncontrolling because its analysis focused on R.C. 3319.11, not R.C. 3311.81. In fact, Naylor was decided approximately 18 years before R.C. 3311.81 went into effect. Further, the Cleveland Plan removed limited contract teachers from R.C. 3319.11's coverage and placed those teachers under R.C. 3311.81's directives instead. The Legislative Service Commission's ("LSC") final analysis of H.B. 525 specifically noted that R.C. 3319.11 was no longer applicable under the Cleveland Plan.
{¶ 26} Naylor is also distinguishable because the process afforded to teachers under R.C. 3319.11 is different than that afforded to teachers in CMSD under R.C. 3311.81 and the collective-bargaining agreement agreed to by the CTU and the CMSD. The record shows that the collective-bargaining agreement, which was changed in conjunction with the Cleveland Plan's passage and R.C. 3311.81's adoption, required two levels of hearings before a hearing with the Board. The LSC's final analysis of H.B. 525 states that the Cleveland Plan "makes several changes to [the] nonrenewal procedures for a municipal school district[.]" In its analysis, the LSC compared changes in the act that were applicable only to municipal school districts ( R.C. 3311.81 ) to the law applicable to all other school districts ( R.C. 3311.19 ). As to changes regarding collective bargaining, the LSC noted that R.C. 3311.81
specifies that the act's requirements regarding nonrenewal of teacher contracts prevail over collective bargaining agreements entered into on or after the act's effective date. However, the district and teachers union must bargain over the due process procedures that precede the district board's notification that it intends not to renew a teacher's contract, but those procedures must be consistent with the act.
*1283 {¶ 27} Based on the above, we disagree with the teachers that R.C. 3311.81's requirement of a "hearing" means that the teachers must be allowed to present evidence and call witnesses. While "hearing" has been interpreted to include such requirements before, such as in Naylor , we find that when examined in context, usage of that term in R.C. 3311.81 does not result in nor require the same interpretation. See R.C. 1.42 ("[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage.").
{¶ 28} Here, R.C. 3311.81's plain language as well as evidence in the record supports the CMSD's argument that the Board hearing was appellate in nature and that R.C. 3311.81 does not require an additional evidentiary hearing during the nonrenewal process. The record shows that the Board reviewed and depended on the lower decisions made by the academic superintendent and CEO or its designee, who were required to hold hearings under the collective-bargaining agreement. Under that agreement, the limited contract teachers employed by the CMSD had two opportunities prior to their hearings before the Board to present any evidence they believed justified renewing their contracts. In fact, Lisa Thomas, a member of the Board since 2011, described the process as beginning with a hearing with the teacher's principal, during which the teacher "presents whatever evidence he or she may have regarding [his or her] performance[.]" If the principal recommends nonrenewal, the teacher then has a hearing before the academic superintendent, during which the teacher can again present whatever evidence he or she believes supports his or her renewal. Finally, if the academic superintendent recommends nonrenewal, the teacher is then provided another hearing during which he or she can present the same, different, or more evidence to the CEO or its designee in support of his or her arguments for renewal.
{¶ 29} We decline to adopt an interpretation of R.C. 3311.81 that would require the Board to give a teacher another evidentiary hearing during the nonrenewal process. The entire organization of the nonrenewal process, under both the collective-bargaining agreement and R.C. 3311.81, supports the Board's position that the changes made were to streamline employment decisions and give the Board more autonomy. The organization also supports the Board's position that it oversees and reviews decisions made by a teacher's principal, academic superintendent, and CEO, all of whom are more directly involved with the teacher. R.C. 3311.81(C) states that "[t]he decision of the board shall be final and shall not be subject to further appeal." Further, R.C. 3311.81(C) suggests that the Board has the final say as to whether to renew a limited contract teacher, a concept that we upheld when we found that the Board was the ultimate decision-maker and that a trial court "lacks jurisdiction to review the Board's decision not to renew the teachers' contracts" in an earlier appeal from this case. Burnell , 8th Dist. Cuyahoga No. 103069, 2015-Ohio-5431, at ¶ 15.
{¶ 30} When considered as a whole, the nonrenewal process under the collective-bargaining agreement and R.C. 3311.81 also supports the Board's position that the hearings it provided to each of the teachers were adequate because they gave each teacher an opportunity to orally argue for their renewal after the teachers had numerous opportunities to present any evidence they believed best justified renewing their contracts. See Marks , 8th Dist. Cuyahoga No. 88948, 2008-Ohio-1820, at ¶ 29, quoting Liese , 11th Dist. Portage No. 2003-P-0033, 2004-Ohio-5322 (held that "hearing" is " 'any confrontation, oral or *1284 otherwise , between an affected individual and a decision[-]maker sufficient to allow the individual to present the case in a meaningful manner.' ") (Emphasis added.)
{¶ 31} To the extent that the teachers argue that the hearing was deficient because they were not provided a rationale before, during, or after the Board hearing and that they could not argue for or respond to recommendations for nonrenewal without knowing the underlying reasons, the record as well as R.C. 3311.81's language make it clear that the Board does not need - and is not required to state - a reason to not renew a teacher's contract.[6] In fact, during her deposition, Link stated, "It's my understanding that with limited contract teachers, [the Board does not] need a reason to non-renew." Additionally, when asked to confirm that the letters recommending nonrenewal sent to the teachers did not contain a rationale for nonrenewal, Thomas explained, "Yes, there is no rationale, and it's also my understanding that there need not be a rationale." This is supported by the fact that a review of the record and the statute actually suggests that the nonrenewal process under the collective-bargaining agreement and R.C. 3311.81 puts the onus on the teacher. Put another way, the nonrenewal process requires the teacher to show why his or her contract should be renewed and does not require the academic superintendent, CEO, or the Board to justify why the teacher's contract should not be renewed. Therefore, contrary to the teachers' contentions, the Board's failure to disclose the information it reviewed in rendering its decision does not render the nonrenewal process unfair.
{¶ 32} Also, to the extent that the teachers argue that their hearings were inadequate because of the alleged deficiencies in the hearings before the academic superintendent and the CEO, we find that those hearings are not before us on appeal. Therefore, whether the hearing before the Board was sufficient does not depend on the alleged deficiencies in the lower hearings and those alleged deficiencies are not before us.
{¶ 33} Accordingly, while we are mindful that R.C. 3311.81's remedial nature requires a liberal construction in favor of the teachers, we nevertheless find that the statute's language analyzed alongside the collective-bargaining agreement and nonrenewal process as a whole compels an interpretation contrary to that proposed by the teachers and adopted by the trial court, and leads us to conclude that R.C. 3311.81 does not require an evidentiary hearing. As a result, we conclude that the Board held an adequate hearing under R.C. 3311.81.
{¶ 34} Accordingly, we sustain appellants' first assignment of error.
{¶ 35} Based on our resolution of the first assignment of error, we find that appellants' second assignment of error is moot.
{¶ 36} Judgment reversed and remanded to the lower court for further proceedings consistent with this opinion.
EILEEN A. GALLAGHER, A.J., and MELODY J. STEWART, J., CONCUR

The plaintiffs-appellees teachers are Kim Burnell, Karen Cunningham-Frank, Barbara Delgado, Iris Diaz, Layla Dibe, Emmett Erwin, Vito Federici, Karen Jozwiak, Brett Katz, Sarah Morrow, Heidi Stevens, and Michael Worth.

According to CMSD's website, CMSD has over 100 schools in its district, "is the second largest school district in the state of Ohio[,]" and covers an area of 82 square miles. Cleveland Metro. School Dist., Facts , http://www.clevelandmetroschools.org/domain/24 (accessed Sept. 26, 2018).

In her deposition, Lisa Thomas, a Board member since 2011, stated that the Board follows the Robert Rules of Order when holding a hearing for nonrenewal. She explained that "the Chair has the ability to set methods by which hearings can be conducted[, and that] the officers of the Board get to determine how they're established." A copy of those rules, however, was not included in the record.

Our opinion and case citation should have identified CMSD as "Cleveland Municipal School District," not "Cleveland Metropolitan School District," a distinction that CMSD explained at oral argument.

R.C. 3319.11 states in pertinent part,
(G)(1) Any teacher receiving written notice of the intention of a board of education not to reemploy such teacher * * * may * * * file with the treasurer of the board a written demand for a written statement describing the circumstances that led to the board's intention not to reemploy the teacher. * * *
(3) Any teacher receiving a written statement describing the circumstances that led to the board's intention not to reemploy the teacher pursuant to division (G)(2) of this section may * * * file with the treasurer of the board of education a written demand for a hearing before the board of education[.]
(4) The treasurer of the board of education * * * shall * * * provide to the teacher a written notice setting forth the time, date, and place of the hearing. * * *
(5) Any hearing conducted pursuant to this division shall be conducted by a majority of the members of the board of education. The hearing shall be held in executive session of the board of education unless the board and the teacher agree to hold the hearing in public. The superintendent, assistant superintendent, the teacher, and any person designated by either party to take a record of the hearing may be present at the hearing. * * *
(7) A teacher may appeal an order affirming the intention of the board not to reemploy the teacher to the court of common pleas of the county * * * on the grounds that the board has not complied with this section or section 3319.111 of the Revised Code.

At oral argument before the trial court, counsel for CMSD stated, "[l]imited contract teachers, essentially they have a one-year contract that, absent an action that can be nonrenewed basically for no reason whatsoever, as long as it's nondiscriminatory, the District can nonrenew them for any reason whatsoever."